Owen, J.
It is admitted by the defendant that its certificates of membership were issued payable to the named bene *582 ficiary or “ assigns ” and that .with the consent of the company, certificates have been assigned to persons neither heirs, nor of the family of the assured. May this lawfully be done ? The purposes of the organization of the defendant are (1) the mutual protection and relief of its members, and (2) the payment of stipulated sums of money to th & families or heirs of the deceased member.
It seems clear that the beneficiary named in each certificate must be an heir, or of. the family, of the deceased member. If the named beneficiary may assign his interest in the certificate to a stranger, who may thereby become invested with all the rights of his assignor, that may be effected by indirection, which is not permitted by direct means, and might result in the creation of a class of beneficiaries neither contemplated nor authorized by the defendant’s charter. We are riot now discussing the right of a beneficiary to assign his death claim, matured by the death of the insured member, or other matured claim, but the right of a named beneficiary, during the life of the insured member, to endow those who are neither of the family, nor can become heirs of the insured, with all the rights of the beneficiary. Such form of certificate is unauthorized.
2. The matters pleaded as defense to the charge of issuing certificates of membership, payable in case of death, to others than the families or heirs of the insured member are substantially established by. the proof. That they were unauthorized is conceded.
It is admitted that $33,700 have been paid to the trustees, as such, as compensation for their service since the organization of the defendant.
The evidence shows that a large proportion of the money, voted by the trustees to themselves, was paid to them upon the pretended warrant of resolutions authorizing i‘ back pay ” for service claimed to have been rendered during years prior to those in which the resolutions were passed.
The new members of the association had a right to assume that the sums appropriated and paid by and to the trustees as for their services in former years, were in full compensation *583 tlierefor, and this scheme of voting back pay to themselves, by the trustees, cannot be justified by the most liberal construction of the statute under which the defendant was chartered.
The sums so paid to the trustees were largely in excess of a fair and reasonable compensation for service actually rendered by them as such trustees. The trustees holding other offices of the company, including members of the' prudential committee, were liberally salaried and paid for their services in their respective official capacities.
These allowances and payments to the trustees, are sought to be justified on the ground that, in addition to the ordinary duties peculiar to their trusteeship, they rendered services in the interest of the company, which were peculiar to the duties of secretary, treasurer, and general and special agents.
These trustees who wei’e constituted agents of the association -were, as such, liberally salaried and paid.
The duties peculiar to trusteeship are to be performed in an aggregate and administrative capacity. Their trusteeship does not equip them for the promiscuous and indiscriminate services for which they now claim to have been entitled to compensation. Their trusteeship does not constitute them “ agents,” .either general or special. As trustees, they have no power, acting in a separate and individual capacity, to bind the company. As trustees, they can bind the company- only by their action in their aggregate capacity as a board. For the time and éxpense incurred in going to, attending, and returning from, their official meetings, and for their services at such meetings, they are entitled to reasonable compensation. The assumption, however, that the trustees voted these sums to themselves simply as compensation for services actually rendered, is shown to be unwarranted by the fact that they were allowed without regard to the respective character, extent or value of such services. While the services for which they now claim the right to be compensated were widely unequal in extent and value, exact uniformity was observed in the amounts paid them. In fact, these payments seem to have been regulated rather by the condition of the treasury than by *584 the compensation actually earned. To be plain about it, this system of paying so called compensation is but a poorly disguised scheme for a “ division of profits ” among the trustees.
Our inevitable conclusion from all this is, that the charge preferred against the defendant that it has been “ operated for the profit of its trustees,” is sustained.
In view of the admissions of the defendant and the foregoing findings of the court concerning the exercise and abuse of its franchises, ought the prayer of the relator to be granted and the defendant ousted of its franchises to do business as a corporation ? This question involves the discharge of an exceedingly delicate and responsible duty, and is one upon which we are not all agreed. It is conceded that the determination of this question rests with the sound discretion of this court, in the light of all the circumstances of the case.
Many things may be said to the credit of this defendant, the methods of its management, the care and fidelity of its principal officers and agents in the selection of risks, the promptness and fairness of the adjustment and payment of death claims, the class and character of those who chiefly constitute its membership. But it would be as injudicious as it is impracticable to attempt to fix a rule or establish a test by which the life of such a corporation, whose franchises have been abused, is either to be taken or spared.
The present membership of the defendant numbers about 3,500, chiefly worthy and deserving people, utterly innocent, if not wholly ignorant, of any misuse or abuse of its franchises. Purged of the unfortunate features of its management which this trial has developed, this association is capable of much usefulness. To visit the perversion of its objects by a few, upon the heads of the entire membership must result in irremediable hardship; and without stating more fully the grounds of our action, or the considerations which move us, it must serve our present purpose to say that the relator’s prayer that the defendant be ousted of its franchise to be a corporation is refused. Judgment will be entered, however, ousting it of the use of its franchises for the profit of its trustees, and *585 for the issuing of certificates of membership in the form complained of by the relator. ^

Judgment accordingly.

Ohey, J., took no part in the decision of this case.
Follett, J., dissents from the refusal of the prayer for ouster of the defendant of its corporate franchises.